# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

|  |  |
|---|---|
| IN RE:<br><br>GREGORY LEON DOTSON AND<br>TROY DENISE DOTSON,<br><br>    Debtors. | ) CHAPTER 13<br>)<br>) CASE NO. 08-62364<br>)<br>) JUDGE RUSS KENDIG<br>)<br>)<br>)<br>)<br>) MEMORANDUM OF OPINION<br>) (NOT INTENDED FOR<br>) PUBLICATION)<br>) |

    Toby L. Rosen, the chapter 13 trustee (hereafter "Trustee") filed an objection to confirmation of Debtors' proposed plan of reorganization on September 16, 2008. Following a hearing on October 8, 2008, the Court established a briefing deadline. Trustee and Debtors filed simultaneous briefs on December 12, 2008. The issue centers on the meaning of the phrase "applicable commitment period," as used in 11 U.S.C. § 1325(a)(4), if the debtors have an above-median income but have no disposable income on line 59 of the means test.

    Jurisdiction is premised on 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. An objection to confirmation constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The following Memorandum of Opinion constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

    This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

    The pertinent facts are simple and straightforward. Debtors filed a joint chapter 13 petition on July 15, 2008. Debtors completed form B22C, the "means test," and are designated above-median Debtors. Consequently, Debtors indicated that the "applicable commitment period" for their chapter 13 plan is five years. After fully completing the means test, Debtors' monthly disposable income is calculated to be negative $203.00.

1

According to their proposed plan, Debtors will not make any distribution to their unsecured creditors. Under the terms of the plan, Debtors will contribute $350.00 per month for a minimum of thirty-six months in order to pay administrative expenses and secured debt. This figure represents the "monthly net income" on Schedule J. Upon completion of payments under the plan, administrative expenses, and secured debt payments, Debtors seek to be released from further payments. The parties do not dispute that this will occur in less than sixty months, but will be at least thirty-six months.

## ARGUMENTS

Trustee argues that Debtors must commit to a sixty month plan regardless of size of the disposable income calculation on line 59 of the means test. This is known as the "temporal approach" to understanding the "applicable commitment period." *See* In re McGillis, 370 B.R. 720 (Bankr. W.D. Mich. 2007); In re Luton, 2007 WL 756373 (Bankr. W.D. Ark. 2007). Under this line of thought, the plan length is determined strictly by reference to 11 U.S.C. § 1325(b)(4), without regard to disposable income, and establishes a specific period of time which cannot be reduced. Consequently, Trustee argues that Debtors must remain under the jurisdiction of the bankruptcy court for sixty months.

Debtors advance the converse theory, known as the "monetary approach." *See* McGillis at 732. This line adopts the view that the commitment period merely establishes a multiplier for calculating the amount of disposable income to be distributed to unsecured creditors under a plan. According to Debtors, since they are not required to make a distribution to unsecured creditors (because they have no disposable income), the commitment period is immaterial: unsecured creditors will receive the same lack of distribution at thirty-six months as they will at sixty months. Thus, Debtors argue that there is no reason to force them into a form of bankruptcy servitude with no benefit to creditors.

The cases cited above provide a capacious overview of the arguments of the parties and therefore the Court will not expound on the parties' positions.

## LAW AND ANALYSIS

I. **General Statutory Framework**

The criteria for confirming a plan are found at 11 U.S.C. § 1325. Under this provision, when a trustee or unsecured creditor objects to confirmation, a court is prohibited from confirming the plan unless the plan, as of its effective date, satisfies the additional requirements listed. The applicable provision for the present controversy states, in pertinent part:

2

>(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
>
>\* \* \* \* \*
>
>>(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B).

### A. Effective Date of Plan

The first item to establish is when a debtor must satisfy the additional requirements in section 1325(b). The statute references the "effective date of the plan." Although not defined, this is commonly viewed as the confirmation date. *See, e.g.*, In re Van Bodegom Smith, 383 B.R. 441 (Bankr. E.D. Wis. 2008); In re Burmeister, 378 B.R. 227 (Bankr. N.D. Ill 2007). Consequently, as of the confirmation date, the plan must provide for all of a debtor's "projected disposable income" "to be received" for the "applicable commitment period" to be submitted into the plan.

### B. Applicable Commitment Period

The Code clearly establishes that, for above-median debtors, the "applicable commitment period" is defined as not less than five years:

>(4) For purposes of this subsection, the "applicable commitment period"---
>
>>(A) subject to paragraph (B), shall be–
>>
>>>(i) 3 years; or

3

> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by twelve, is not less than--
>
>> (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>>
>> (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>>
>> (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4; and
>
> (B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

11 U.S.C. § 1325(b)(4). According to Debtors' means test, their "annualized current monthly income" is $80,004.00. Debtors' household size is four and, at the time this case was filed, the median family income for a family of four in Ohio was $70,532.00. Thus, Debtors are above median income and section 1325(b)(4)(A)(ii)(II) is applicable. Consequently, the "applicable commitment period" is not less than five years. The Court cannot conclude that the plain language of the statute is ambiguous and must interpret it accordingly. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000) (citing U.S. v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989)). The statutory definition is not dependent on any other factors for determining the term length of a plan. Affording the provision any other interpretation seriously undermines the effect of 11 U.S.C.

4

§ 1325(b)(4)(B), a result which the Court is admonished to avoid: "[a] statute should be interpreted 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" Cafarelli v. Yancy, 226 F.3d 492, 499 (6th Cir. 2000) (quoting Lake Cumberland Trust, Inc. v. United States E.P.A., 954 F.2d 1218, 1222 (6th Cir. 1992)). The Court finds that above-median income BAPCPA debtors must commit to a sixty month plan. *See also* In re Davis, 348 B.R. 449 (Bankr. E.D. Mich. 2006).

Although the parties identify this as the disputed issue, that identification is marginally misleading. The true controversy concerns the import of the "applicable commitment period" when Debtors have no disposable income. In light of the Court's finding that Debtors must commit to a sixty month plan, the question now becomes what they must pay into the plan. To determine this, it is necessary to engage in a discussion related to disposable income.

### C. Disposable Income

"Disposable income" is defined at 11 U.S.C. § 1325(b)(2) and basically is comprised of a debtor's current monthly income less allowable expenses. As this Court has previously stated, for above-median debtors, disposable income in Chapter 13 is calculated as it is calculated in Chapter 7 cases. *See* In re Terrell, Case No. 08-60172 (Bankr. N.D. Ohio January 15, 2009) (unpublished). In this case, Debtors' undisputed disposable income is negative $203.00 per month. Trustee does not challenge this calculation.

However, section 1325(b)(1)(B) references "*projected* disposable income," (emphasis added) which is not defined in the Code. Trustee essentially argues that not only do Debtors need to commit to a plan for five years, but they must commit their monthly net income from Schedule J, which corresponds to Debtors' proposed plan payment, for that time period. Otherwise, there could be no reason to venture into this forest. Debtors object, arguing that their projected disposable income is the equivalent of the disposable income calculated on the means test, which is the amount to be paid to unsecured creditors. Since the amount is zero, there is no reason for them to be in the plan five years when the same result, no distribution to unsecured creditors, will occur at thirty-six months.

"Projected disposable income" is not a new term, but was used in the statute prior to the BAPCPA enactment. Under the pre-BAPCPA law, the statute required "projected disposable income" to be paid into a plan for a minimum of thirty-six months. The projected disposable income was not earmarked for unsecured creditors prior to BAPCPA, but merely was the amount that funded the plan. Under the old law, "projected disposable income" was generally viewed as the net income on Schedule I less the reasonable and necessary expenses listed on Schedule J, or the "net monthly income" listed on the bottom of Schedule J. *See also* Hildebrand v. Thomas (In re Thomas), 395 B.R. 914 (B.A.P. 6th 2008); In re McCarty,

5

376 B.R. 819 (Bankr. N.D. Ohio 2007) (unpublished).

A sampling of case law in the Sixth Circuit offers context for understanding "projected disposable income" prior to the BAPCPA amendments. In In re Freeman, the Sixth Circuit Court of Appeals encountered a question of whether a larger-than-expected tax refund from prepetition income was "projected disposable income." 86 F.3d 478 (6th Cir. 1996). In making the determination, the court stated that "the inquiry is fact-based and is dependent on the findings of the court as to whether the provisions of § 1325(b)(1)(B) are met: (1) was the tax refund "projected disposable income" as of the date the first payment was due under the plan . . . [?]" Id. at 481. In the case, the court concluded that the refund was projected disposable income because "the debtor had specifically identified that tax refunds should go the plan and made no arguments that the funds were needed for 'maintenance and support' of the debtor and her dependents." Id. The court went on to state when it was not clear whether refunds were intended as part of the "projected disposable income," a court should undertake a case-by-case review. Freeman can be understood to provide a basis for future sources of income fall under the rubric of "projected disposable income" when the income has been identified at confirmation. See also In re Grice, 319 B.R. 141 (Bankr. E.D. Mich. 2004); In re Grissom, 137 B.R. 689 (Bankr. W.D. Tenn. 1992).

Two other bankruptcy cases provide further illumination of the term. In the first case, the debtors proposed a four-year plan in an effort to maintain a higher standard of living during their chapter 13 case. See In re Gonzales, 157 B.R. 604 (Bankr. E.D. Mich. 1993). The court noted that debtors' budget included expenses the court determined were not reasonably necessary for maintenance or support of debtors or their dependents, thereby lowering the amount of disposable income paid into the plan. The court confirmed the extended plan after undertaking the following calculations:

> After the court determines the extent to which the debtor's budget exceeds what the court deems to be a reasonable amount, it adds that amount to the monthly payment proposed by the debtor in the plan. It then multiplies that amount by 36, as § 1325(b)(1)(B) requires all disposable income over only a three-year period. The result represents the total amount that the debtor would have to pay under a three-year plan in order to satisfy § 1325(b)(1)(B).
>
> Next, the court computes the total amount to be paid by the debtor pursuant to the extended plan. It then compares that amount with the three-year minimum payment, adjusted to include the interest that those payments would have earned during the extension period.

6

Id. at 613 (footnote omitted); *see also* In re Elrod, 270 B.R. 258 (Bankr. E.D. Tenn. 2001); In re Brooks, 241 B.R. 184 (Bankr. S.D. Ohio 1999). If the total amount to be paid into the plan is greater than or equal to the amount that would be paid in the absence of the higher expenses, the case is confirmable. The court used debtors' disposable income, as adjusted upward by the court after allowing for higher-than-reasonable living expenses, as a base for projecting the total of plan payments. This figure was then compared to the amount of actual payments made over the longer term plan after factoring in interest. As long as the latter figure was larger, the court found the plan was confirmable.

Gonzales offers minimal support for Debtors' position in that the commitment period was used as a multiplier to project what the unsecured creditors would have received in the absence of the offending expenses. Further, the calculation was used as establishing the bottom line for the payment to the unsecured creditors. However, any reliance on Gonzales must end at this point because it is simply not dispositive. It is clear that there was an underlying problem with the calculation of Debtors' disposable income in Gonzales, so the court fashioned an acceptable, albeit equitable, remedy.

In a different vein, the Bankruptcy Court for the Southern District of Ohio specifically found that "projected disposable income" was determined at confirmation:

"§ 1325(b)(1)(B) requires provision for 'payment of all projected disposable income' as calculated at the time of confirmation, and we reject the Trustee's attempt to impose a different, more burdensome requirement [which result from use of actual disposable income.]" *See* In re Bass, 267 B.R. 812, 817 (Bankr. S.D. Ohio 2001) (citing In re Anderson, 21 F.3d 355 (9th Cir. 1994)). The result was a definitive rejection of a fluid concept of "projected disposable income" which would have been achieved by estimating future disposable income and accounting for it in plan payments.

What is apparent from these cases is that "projected disposable income" was a calculation based on the disposable income recognized at confirmation. Disposable income could include future sources of known, or actual, income. Further, when the facts of a case warranted, the figure was multiplied by the minimum plan length to extrapolate the "projected disposable income" figure, but it was still tied to "disposable income." *See* Thomas, 395 B.R. at 921 ("Pre-BAPCPA, courts looked to the debtor's schedules . . . and arrived at a 'disposable income' figure which was consistent with 'projected disposable income.'").

The problem is that pre-BAPCPA, the disposable income was taken directly from a debtor's schedules, which was generally based on current income and expenses, and there was no other alternative figure to "project." Now, however, the landscape has changed. The income provided by debtors on the means test is a six-month historical average and may exclude sources of current income and may have little tie to a debtor's economic reality. Further, many expenses are now standardized for debtors through the means test and, again,

7

may have little correlation to a debtor's actual current expenses. Under the new BAPCPA method of calculating disposable income, there may be little or no relationship to current income or expenses. This is apparent on these facts. Here, after deducting all allowed expenses, Debtors show no disposable income on the means test. However, their schedule J indicates that they have $350.00 in monthly net income. They admit that after paying this amount for thirty-six months, they will have satisfied their obligations to secured, priority and administrative creditors. Thus, starting at approximately month thirty-seven, the $350.00 could be used to pay unsecured creditors. If Debtors were required to fund the plan for sixty months, unsecured creditors would receive approximately $7,500.00 ($350.00 x 24 months less 10% for the Trustee's administrative fees) after month thirty-six. The total unsecured debt listed on Schedule F is approximately $28,000.00, so unsecured creditors could receive, roughly, a twenty-seven percent dividend from the additional two years of payments. According to Debtors, this is simply not disposable income.

There is more than a little incredulity in this argument. The Court concludes that Debtors' position is not well-taken. First, "disposable income" and "projected disposable income" are not synonymous concepts. Disposable income is backward-looking, based on historical earnings and a system of standardized expenses, while "projected disposable income" is intended to capture an amount more reflective of a debtor's actual economic posture. Use of the historical "disposable income" fails to give effect to both the word "projected" and the phrase "to be received" in section 1325(b)(1)(B).

The Court's conclusion is buttressed by most of the decisions on this issue in this circuit. _See, e.g.,_ McCarty, 376 B.R. 819 (finding projected disposable income is income projected to be received during the applicable commitment period less the disposable income exclusions); In re Grant, 364 B.R. 656 (Bankr. E.D. Tenn. 2007) (concluding that "projected disposable income" is not the same as "disposable income" and that current monthly income determines the applicable commitment period regardless of the "projected disposable income"); In re Chriss-Price, 376 B.R. 648 (Bankr. M.D. Tenn. 2006) (recognizing that "projected disposable income" and "disposable income" are not synonymous and that the disposable income figure on the means test may be a flexible number); In re Zimmerman, 2007 WL 295452 (Bankr. N.D. Ohio 2007) (unreported) (determining that "projected disposable income is forward-looking and therefore not the same as "disposable income" and using "current monthly income" as the starting point for "projected disposable income") _cf._ In re Kolb, 366 B.R. 802 (Bankr. S.D. Ohio 2007) (declaring that "projected disposable income" is the equivalent of "disposable income" projected over the life of the plan).

Most recently, the Sixth Circuit Bankruptcy Appellate Panel iterated that the term "projected disposable income" has new meaning in light of the historical view of the means test, stating it "clearly contemplates a forward-looking analysis of the debtor's income and expenses." Thomas, 395 B.R. at 922. The BAP's approach was to use the "disposable income" from the means test unless a party objects and "the court finds that debtor's schedules or other credible evidence require a reassessment of disposable income . . . ." Id.

8

at 923. This Court agrees that when changes have occurred, or an objection has been raised, a more fluid, less historical approach allows for a determination of "projected disposable income" "to be received" as of the "effective date of the plan" consistent with 11 U.S.C. § 1325(b)(1)(B).

Consideration of these factors urges the Court to conclude that, in light of Trustee's objection and the findings contained herein, Debtors' "projected disposable income" is not the negative $203.00 set forth on line 59 of the means test. Instead, the Court finds that the figure is more akin to the "monthly net income" figure of $350.00 listed on the bottom of Schedule J. This figure represents a more current snapshot of Debtors' current actual earnings as reduced by their current expenditures. No argument has been made that this figure is not representative of the amount likely to be available for the term of their five year plan.

## CONCLUSION

When an objection to confirmation has been filed, 11 U.S.C. § 1325(b)(1)(B) requires a court to find that, as of confirmation, a debtor is committing all "projected disposable income" into the plan for the "applicable commitment period." The term "projected disposable income" is not synonymous with "disposable income" as calculated under section 1325(b)(2). The "disposable income" figure is calculated with a retrospective, not prospective view and therefore may result in the complete nullification of the word "projected" and the phrase "to be received" in the statute. The "monthly net income" figure identified by Debtors on Schedule J is more reflective of the disposable future income available for plan creditors. As above-median debtors, Debtors must contribute this "projected disposable income" into the plan for a period of five years. Thus, Trustee's objection is well-taken and is **SUSTAINED**.

An order shall be entered immediately.

/s/ Russ Kendig

---
RUSS KENDIG
UNITED STATES BANKRUPTCY JUDGE

SERVICE LIST

Donald M Miller
1400 Market Ave N
Canton, OH 44714-2608

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg, 4th Floor
Canton, OH 44702